## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STEVE BRATTAIN, et al.,

     Plaintiffs,

     v.

AKIN ALCITEPE, et al.,

     Defendants.

Civil Action No. 11-1816
DAR

## MEMORANDUM OPINION AND ORDER

Plaintiffs Steve Brattain, Tunc Kivanc, Angelo Pasaretta, and Gurkan Us commenced this action against Defendants Akin Alcitepe, Pablo Henrich, Antoine Khoury, A.S. Khoury & Associates P.C., Jorge Lobo, Mustafa Poyraz, and a John Doe, "seeking compensatory and punitive damages for [a]ctual [f]raud, [c]onstructive [f]raud, [c]onspiracy, [c]onspiracy to [d]efraud, [m]alpractice, [n]egligence, [g]ross [n]egligence, [v]iolations of the Securities Act of 1933 and [v]iolations of the Securities Act of 1934 committed by the Defendants."[1]  Complaint (Document No. 1) ¶ 1.

---

[1] The Clerk of the Court entered default against Defendant Jorge Lobo on June 6, 2012. Default (Document No. 46). Plaintiffs voluntarily dismissed Defendants Pablo Henrich and John Doe. Notice of Dismissal of Defendant Pablo Henrich (Document No. 48); Notice of Dismissal of Defendant John Doe Supervisor (Document No. 49). The summons for Defendant Mustafa Poyraz was returned unexecuted, *see* Process Receipt and Return (Document No. 10); Plaintiffs previously represented that their "attempts at serving Defendant[] Poyraz" were unsuccessful, and opined that he is in Turkey, *see* Plaintiffs' Motion to Extend Time to Serve Process on Defendants (Document No. 13) at 3; 02/17/2012 Minute Order. Plaintiffs engaged in limited discovery "for the limited purpose of inquiring into the whereabouts and/or last known address of Mustafa Poyraz," and were to initiate service of process on him by July 6, 2012. Joint Status Report (Document No. 40); Order (Document No. 47). At a status hearing conducted on July 11, 2012, Plaintiffs represented that they initiated service of process on Defendant Poyraz, pursuant to the Hague Convention; however, since that date, Plaintiffs have not filed a return of service, or any other documentation indicating that Defendant Poyraz has been served.

Brattain, et al. v. Alcitepe, et al.                                                                          2

This matter was referred to the undersigned United States Magistrate Judge for all

purposes.  *See* Notice of Consent to Proceed before a United States Magistrate Judge for All

Purposes (Document No. 34); Order Referring Case to Magistrate Judge for All Purposes

(Document No. 35).  Pending for determination by the undersigned are Defendant Akin

Alcitepe's Motion to Dismiss Plaintiff[s'] Complaint Counts I, II, III, VIII, XIII, XVII, XVII,

XXI, XXII, and L ("Defendant Alcitepe's Motion") (Document No. 12) and Defendants' Antoine

S. Khoury and A.S. Khoury & Associates P.C.'s Motion to Dismiss Plaintiffs' Complaint

("Khoury Defendants' Motion") (Document No. 32).  On August 9, 2012, the undersigned

conducted a hearing with respect to both motions.  08/09/2012 Minute Entry.  Upon

consideration of the motions, the memoranda in support thereof and in opposition thereto, the

arguments of counsel at the hearing, and the Plaintiffs' complaint, the court will grant in part

Defendant Alcitepe's motion, and will grant in part the motion of Defendants Khoury and A.S.

Khoury & Associates.


**BACKGROUND**[2]

Defendants Mustafa Poyraz, Pablo Henrich, and Jorge Lobo began a business venture,

called "Fusion Cuisine," "to open and operate Morso Restaurant" in the Georgetown

neighborhood of the District of Columbia.  Complaint ¶ 16.  The three "agreed to purport and

maintain" that the restaurant was their "primary business objective"; however, their "true

objective" was to defraud investors through "fraudulent funding and stock purchase agreements."

*Id.* ¶¶ 17-18.  They retained Defendant Antoine Khoury, an accountant, who agreed to assist

---

[2] Unless otherwise indicated, all facts are cited from Plaintiffs' complaint, and are assumed to be true at this stage of the proceeding.

them.  *Id.* ¶¶ 8, 20.  Defendant Khoury "prepared documents necessary to form, register, and

incorporate the entity that would become Fusion Cuisine," through his accounting firm,

Defendant A.S. Khoury & Associates.  *Id.* ¶¶ 9, 21.  They purchased "fixtures, furniture, and [a]

liquor license," from another Georgetown restaurant, and leased property located at 3277 M

Street, N.W., in the District of Columbia.  *Id.* ¶¶ 24-25.  In an effort to further provide legitimacy

to their undertaking, the Defendants then enlisted Defendant Akin Alcitepe, an attorney who at

the time worked at Howrey, LLP, to serve as Fusion Cuisine's general counsel.  *Id.* ¶¶ 6, 27.

"Fusion Cuisine was authorized to issue 5,000 shares," of which Defendants Poyraz,

Lobo, and Henrich "collectively controlled 55%."  *Id.* ¶¶ 22-23.  On May 19, 2009, Plaintiff

Tunc Kivanc entered into an agreement with Defendants Poyraz and Lobo, under which he would

obtain twenty-percent ownership in Fusion Cusine "in exchange for an investment totaling no

less than $150,000.00, but no more than $180,000.00."  *Id.* ¶¶ 35-36.  Plaintiff Kivanc entered

into this agreement after Defendants Poyraz, Henrich, and Lobo assured him that "the business

was sound," and after Defendant Poyraz agreed to grant him access to the venture's finances.

*Id.* ¶¶ 32-34.  On May 21, 2009, Plaintiff Kivanc and Defendant Poyraz "entered into a

Conditional Promise . . . under which Plaintiff Kivanc could request his investment be returned

to him."  *Id.* ¶ 40.  At the May 21 meeting, Defendants Poyraz and Lobo "falsely" told Plaintiff

Kivanc that Fusion Cuisine "owned the liquor license associated with" the leased property.  *Id.* ¶

43.  Plaintiff Kivanc invested in Fusion Cuisine, and also "entered into a Non-Cancellable

Commercial Equipment Lease Agreement as a guarantor" for the restaurant.  *Id.* ¶¶ 45-46, 55.

When Plaintiff Kivanc later met with Defendants Alcitepe and Poyraz at Defendant Alcitepe's

office, the following year, they "confirmed that Plaintiff Kivanc had invested a total of

approximately $168,000 into Fusion Cuisine." *Id.* ¶ 106.  Unbeknown to Plaintiff Kivanc,

Defendants also entered into agreements with other, non-party, investors, one obtaining a 10%

ownership in Fusion Cuisine in exchange for $75,000, and another obtaining a 4% interest in

exchange for $30,000.  *Id.* ¶¶ 47, 51, 56, 59.

In December 2009, the landlords of their leased property served a notice to vacate

because rent was $107,520 in arrears.  *Id.* ¶ 62.  Defendants "purposefully concealed" the notice

from Plaintiff Kivanc.  *Id.* ¶ 62.  In January 2010, Plaintiff Angelo Pasaretta loaned Defendant

Poyraz $6,000 for the restaurant, and entered into an agreement with Defendants Poyraz and

Lobo by which he obtained a 15% ownership interest in Fusion Cuisine in exchange for a

$50,000 investment.  *Id.* ¶¶ 64, 67.  Defendants concealed the other investors and the notice to

vacate from Plaintiff Pasaretta, and likewise concealed Plaintiff Pasaretta's investment from

Plaintiff Kivanc.  *Id.* ¶¶ 69, 70.  In February 2010, Plaintiff Pasaretta loaned an additional

$19,000 to Defendant Poyraz based on Defendants Poyraz and Lobo's representations that

additional funding was needed to prepare for the restaurant's opening.  *Id.* ¶¶ 74-77.

On March 9, 2010, the landlords of their rental property filed suit in the Superior Court of

the District Columbia against Fusion Cuisine and Defendants Poyraz, Lobo, and Henrich for

$189,000 in unpaid rent.  *Id.* ¶ 79.  Defendant Alcitepe entered his appearance on behalf of

Fusion Cuisine.  *Id.*  Defendants concealed this lawsuit from Plaintiffs Kivanc and Pasaretta.  *Id.*

The following date, March 10, 2010, Plaintiff Pasaretta loaned an additional $3,000 to

Defendants Poyraz, Lobo, and Henrich.  *Id.* ¶ 80.  On March 15, 2010, he entered into a

subsequent agreement, by which he would lend $75,000 to Fusion Cuisine, would obtain an

additional 36% ownership interest upon Defendants Poyraz, Lobo, and Henrich's failure to repay

his loan, and would have authority to approve expenditures during the loan period.  *Id.* ¶¶ 81, 82.

Pursuant to the agreement, Plaintiff Pasaretta obtained an additional 36% of Fusion Cuisine's

shares after Defendants Poyraz and Lobo failed to repay the loan.  *Id.* ¶ 87.  On April 26, 2010,

Plaintiff Pasaretta loaned Defendants Poyraz, Lobo, and Henrich an additional $20,000 after they

represented they were unable to purchase the liquor license from the landlords because of their

overdue rent.  *Id.* ¶ 91.  On April 29, 2010, Defendants, through Defendant Alcitepe's

negotiations, obtained a consent-judgment in the lawsuit brought by their landlord.  *Id.* ¶¶ 93-94,

96.  Plaintiffs were still unaware of the lawsuit, and the disposition.  *Id.* ¶ 96.

        In May 2010, Plaintiffs Gurkan Us and Steve Brattain entered into an agreement with

Defendant Poyraz, whereby they each received a 12.5% ownership interest in Fusion Cuisine in

exchange for a combined investment of $200,000.  *Id.* ¶¶ 98, 102.  Defendants concealed the

consent judgment and the involvement of the other investors from Plaintiffs Us and Brattain.

*Id.* ¶ 105.

        On May 26, 2010, Morso Restaurant opened; however, it closed one week thereafter,

after the chef resigned.  *Id.* ¶ 107.  Plaintiffs Us and Brattain entered into an agreement with

Fusion Cuisine, on June 30, 2010,  "for the purpose of entering into a stockholders' agreement."

*Id.* ¶ 108.  That day, unbeknown to Plaintiffs, Defendant Alcitepe faxed bankruptcy forms to

Defendant Poyraz.  *Id.* ¶ 110.  Fusion Cuisine eventually filed for Chapter 11 bankruptcy on July

1, 2011.  *Id.* ¶ 114.

        In total, after entering into the various investment agreements with Plaintiffs and other

non-party investors, Defendants had sold 165% of Fusion Cuisine's shares.  *Id.* ¶ 103, 125.

However, "Defendants failed to issue stocks, or cause stocks to be issued," *id.* ¶¶ 53, 61, 71, 89,

104, and did not provide Plaintiffs with any investment or ownership documentation in response

to their requests, *id.* ¶¶ 122-24.  Additionally, Plaintiffs were provided false financial records,

*id.* ¶¶ 111-112, and, despite their inquiries, were never told that Fusion Cuisine initiated

bankruptcy proceedings, *id.* ¶¶ 114, 117, 119.

Plaintiffs commenced this action seeking compensatory damages "totaling no less than"

$610,757.39 and punitive damages "totaling no less than" two million dollars.  Complaint at 42.

Plaintiffs' complaint includes twenty-seven counts alleging actual fraud, constructive fraud, five

counts of conspiracy, five counts of conspiracy to defraud, four counts of malpractice, four

counts of negligence, four counts of gross negligence, violations of section 12 of the Securities

Act of 1933, violations of section 17 of the Securities Act of 1933, and violations of section 10

of the Securities Exchange Act of 1934.[3]  Defendant Akin Alcitepe "move[d] to dismiss all

claims asserted against him in Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure."  Defendant Alcitepe's Motion at 1-2.  Defendants Antoine Khoury

and A.S. Khoury & Associates P.C. ("Khoury Defendants") moved to "dismiss Plaintiffs'

Complaint with prejudice."  Khoury Defendants' Motion (Document No. 32) at 1.  Plaintiffs

oppose both motions, and ask that each motion be denied.  In the alternative, they ask that they

be permitted to file an amended complaint as to the counts for which the court is inclined to

dismiss.  Plaintiffs' Response to Defendant Alcitepe's Motion to Dismiss Plaintiffs' Complaint

Counts I, II, II, VII, XII, XVII, XVII, XXI, XXII, and L ("Opposition to Defendant Alcitepe's

Motion") (Document No. 30) at 21; Plaintiffs' Response to Defendants Khoury and A.S. Khoury

---

[3] By the undersigned's count, there are twenty-seven counts alleged in Plaintiffs' complaint.  For reasons unknown to the undersigned, the counts, designated by Roman numerals, are not consecutively numbered; there are duplicate numerals and a gap in numbering.

& Associates Motion to Dismiss Plaintiffs' Complaint ("Opposition to Khoury Defendants'

Motion") (Document No. 37) at 16.

## APPLICABLE STANDARDS

### *Federal Rule of Civil Procedure 12(b)(1)*

A defendant may move, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss

a claim for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are

courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."

 *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (internal quotation marks omitted) (quoting

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Accordingly, the party

claiming subject matter jurisdiction bears the burden of demonstrating that it exists.  *Kokkonen*,

511 U.S. at 377; *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008) (citation omitted).

"When reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil

Procedure 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit

of all inferences that can be derived from the facts alleged."  *Gable v. United States*, No. 12-

1634, 2013 WL 1150181, at *3 (D.D.C. Mar. 21, 2013) (citing *Barr v. Clinton*, 370 F.3d 1196,

1199 (D.C. Cir. 2004)).

### *Federal Rule of Civil Procedure 12(b)(6)*

A party may seek dismissal of a claim based on the pleading party's "failure to state a

claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted)

(internal quotation marks omitted).  The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  While the court must accept the allegations pled in the complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citation omitted).  The Federal Rules of Civil Procedure generally require that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  When pleading special matters such as fraud, however, "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

## DISCUSSION

### *Subject-Matter Jurisdiction*

Plaintiffs invoke subject-matter jurisdiction pursuant to the Securities Act of 1933, 15 U.S.C. § 77v(a), federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, § 1367.  *See* Complaint ¶ 13.  The Khoury Defendants first contend that the court lacks jurisdiction because there is not complete diversity of citizenship among the parties.[4]  Memorandum of Points and Authorities in Support of Defendants' Antoine S. Khoury and A.S. Khoury & Associates P.C.'s Motion to Dismiss Plaintiffs' Complaint ("Khoury Defendants' Memorandum") (Document No. 32) at 5.  The Khoury Defendants further challenge Plaintiffs' invocation of supplemental jurisdiction, contending that the Securities Act claims against

_____

[4] Although the Khoury Defendants caption this argument as challenging "personal jurisdiction," their argument, in substance, challenges the subject-matter jurisdiction of the court.  *See* Khoury Defendants' Memorandum at 5; Defendants' Antoine S. Khoury and A.S. Khoury & Associates P.C.'s Reply Brief in Support of Their Motion to Dismiss Plaintiffs' Complaint ("Khoury Defendants' Reply") (Document No. 39) at 2-3.

Defendants Alcitepe and Poyraz do not merit exercise of supplemental federal jurisdiction over the state-law claims alleged against Defendants Khoury and A.S. Khoury.  *Id.* at 6.  More specifically, they argue that "there are no allegations that Mr. Khoury or A.S. Khoury ever sold Fusion Cuisine securities to the Plaintiffs," but rather, the claims against them are "based solely upon state-law claims [and] entirely distinguishable from claims setting from the sale of securities . . . ."  *Id.* at 7.  They also argue that the court should "exercise its discretionary authority to decline supplemental jurisdiction," because the "state-claims predominat[e] over federally-based claims."  *Id.* at 7.

First, the court does not address the Khoury Defendants' argument regarding diversity of citizenship because Plaintiffs have not invoked 28 U.S.C. § 1332 as a basis for this court's jurisdiction.  *See* Complaint ¶ 13; Opposition to Khoury Defendants' Motion at 3.  With respect to the three counts alleging violations of federal securities law, this court has jurisdiction pursuant to 15 U.S.C. § 77v(a).  With respect to the remaining counts, the court may exercise jurisdiction pursuant to supplemental jurisdiction, 28 U.S.C. § 1367.

In civil actions in which the district court has original jurisdiction, the court, with some exceptions, "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The court may, however, "decline to exercise supplemental jurisdiction" over such a claim if "the claim raises a novel or complex issue of State law," "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," "the district court has dismissed all claims over which it has original jurisdiction, or" "in exceptional circumstances,

there are other compelling reasons for declining jurisdiction." § 1367(c).

The Supreme Court "has long adhered to principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997) (internal quotation marks and alterations omitted) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). This jurisdiction is "a doctrine of discretion," and in so deciding, courts consider "judicial economy, convenience and fairness to litigants," as well as whether "the state issues substantially predominate." *Gibbs*, 383 U.S. at 726-27.

The court finds that all of Plaintiffs' claims are "part of the same case or controversy" in that they all "derive from a common nucleus of operative fact" regarding Defendants' alleged execution of a fraudulent scheme "to defraud third-party investors of funds through multiple fraudulent funding and stock purchase agreements." *See* Complaint ¶ 18. There is substantial overlap among the issues and factual allegations because the allegations regarding the sale of securities are at the core of the Plaintiffs' theory of the case. Accordingly, the court, in its discretion, may choose to exercise supplemental jurisdiction over the state law claims.

### *Securities Act Violations*

Because Plaintiffs' claims asserting Securities Act violations are the basis of this court's jurisdiction, the court will address these claims first. Plaintiffs allege three counts of Securities Act violations against Defendants Alcitepe, Henrich, Lobo, and Poyraz. Complaint ¶¶ 254-265.

Given the dismissal of Defendant Henrich, the default entered against Defendant Lobo, and the

lack of proof of service for Defendant Poyraz, *see supra* note 1, only the Securities Act claims

against Defendant Alcitepe are before the court.

§ 12 of the Securities Act of 1933

Defendant Alcitepe contends that Plaintiffs do not "allege that Defendant Alcitepe offered

or sold securities to the Plaintiffs," and accordingly, their alleged violation of section 12 must

fail.  Defendant Alcitepe's Memorandum at 2, 8.  Defendant Alcitepe argues that the actions he

"is alleged to have taken with respect to such transactions . . . constitute nothing more than the

provision of legal services to his client." *Id.* at 9.  Plaintiffs contend that "Defendant Alcitepe

was present during, and participated in, the meetings in which the sale of Fusion Cuisine

securities was negotiated," and that he "prepared the fraudulent documents that purportedly

transferred securities . . . ."  Opposition to Defendant Alcitepe's Motion at 16.

Section 12(2) of the Securities Act of 1933 establishes civil liability for someone who

> offers or sells a security . . . by the use of any means or instruments
> of transportation or communication in interstate commerce or of the
> mails, by means of a prospectus or oral communication, which
> includes an untrue statement of a material fact or omits to state a
> material fact necessary in order to make the statements, in the light of
> the circumstances under which they were made, not misleading (the
> purchaser not knowing of such untruth or omission), and who shall
> not sustain the burden of proof that he did not know, and in the
> exercise of reasonable care could not have known, of such untruth or
> omission . . . .

15 U.S.C. § 77*l*(a)(2).  "Claims alleging fraud under Section 12(2) have been held to be subject

to the heightened pleading requirements of  Rule 9(b) of the Federal Rules of Civil Procedure

and therefore must be pleaded with particularity."  *Hite v. Leeds Weld Equity Partners*, 429 F.

Supp. 2d 110, 114-15 (D.D.C. 2006) (citations omitted); *see also In re U.S. Office Prods. Sec.*

*Litig.*, 326 F. Supp. 2d 68, 82 (D.D.C. 2004).

        First, although the issue was not addressed by either of the parties, the court finds that

Plaintiffs have not pled sufficient facts to establish their standing as to this claim.  Plaintiffs

reference ownership agreements, but have not alleged facts to suggest that the sale of securities in

question were part of a public offering.  *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 577-78

(1995) (finding that the contract of sale was not a "prospectus," as defined by the statute, and

explaining that "[t]he intent of Congress and the design of the statute require that § 12(2) liability

be limited to public offerings"); *see also In re Interbank Funding Corp. Sec. Litig.*, 329 F. Supp.

2d 84, 95-96 (D.D.C. 2004) (citations omitted) (dismissing a Section 12(a)(2) claim where the

party had "not alleged that he purchased [the shares] in public offerings," because "Section

12(a)(2) does not apply to purchases in aftermarket or private transactions"), *vacated and*

*remanded, Belizan v. Hershon*, 434 F.3d 579 (D.C. Cir. 2006); *Gallman v. Sovereign Equity*

*Grp.*, No. 11-2750, 2012 WL 1820556, at *5 (D. Md. May 15, 2012) ("Because Plaintiffs do not

allege that Defendants attempted to sell securities to them via a prospectus or pursuant to a

registered offering, Plaintiffs lack standing to bring a § 12(a)(2) claim.").

        In any event, Plaintiffs have failed to state a claim under the pleading standard of Rule

9(b).  With respect to the offer or sale of securities, Plaintiffs allege that Defendant Alcitepe

attended meetings and drafted the agreements by which shares were transferred to Plaintiffs and

other non-party investors, and base their claim off his involvement in this capacity.  *See*

Complaint ¶¶ 37, 48, 57, 65, 83, 99.  This involvement of Defendant Alcitepe, serving as general

counsel to Fusion Cuisine, is insufficient because Plaintiffs have not alleged that he solicited or

offered to sell them shares, nor have they alleged that Defendant Alcitepe, rather than his client,

sold the Fusion Cuisine shares.  *See Pinter v. Dahl*, 486 U.S. 622, 647-48, 654 (1988)

(interpreting the "offers or sells" language under § 12(1), and finding that liability extends to

"one who solicits securities sales for financial gain," but "[b]eing merely a 'substantial factor' in

causing the sale" is insufficient to render liability); *In re Newbridge Networks Sec. Litig.*, 767 F.

Supp. 275, 280 (D.D.C. 1991) (citation omitted) ("The Supreme Court recently construed the

meaning of "seller" for the purposes of § 12(1) in *Pinter v. Dahl* . . . and virtually every court has

subsequently applied its holding to § 12(2)."); *see also Bennett v. Durham*, 683 F.3d 734, 735-38

(6th Cir. 2012) (relying on interpretations of § 12 to inform its interpretation of a similarly

worded state law, and determining that allegations that an attorney "knowingly drafted false or

misleading" deal documents were insufficient to survive a motion to dismiss because the client,

not the attorney, "offered" or "sold" the shares).

Because the Plaintiffs have not pled sufficient facts to support their claim, the court will

grant Defendant Alcitepe's motion as to this claim and dismiss Count XXI.

§ 17 of the Securities Act of 1933

Defendant Alcitepe contends that Plaintiffs' allegations lack sufficient specificity to

support Count XXII, because Plaintiffs do not "specifically allege that Defendant Alcitepe

directly or indirectly utilized any means or instruments of communication in interstate commerce

. . . ."  Defendant Alcitepe's Memorandum at 9-10.  Defendant Alcitepe further contends that

Plaintiffs fail to allege when the acts occurred, and which Plaintiffs were the subject of the

alleged fraud.  *Id.* at 10.  Plaintiffs counter that their complaint satisfies the pleading

requirements under Rule 9(b) because it "details the fraudulent scheme undertaken by the

Defendants, and specifically identifies Defendant Alcitepe's role in [] organizing and conducting

meetings."  Opposition to Defendant Alcitepe's Motion at 18-19.  Plaintiffs argue that their

complaint describes "Defendant Alcitepe's course of business through which he utilized the

instrumentalities of interstate commerce to actively carry out and perpetuate that fraud."  *Id.* at

20.

> Section 17(a) of the Securities Act of 1933 provides that

>> It shall be unlawful for any person in the offer or sale of any securities
>> . . . by the use of any means or instruments of transportation or
>> communication in interstate commerce or by use of the mails, directly
>> or indirectly (1) to employ any device, scheme, or artifice to defraud,
>> or (2) to obtain money or property by means of any untrue statement
>> of a material fact or any omission to state a material fact necessary in
>> order to make the statements made, in light of the circumstances
>> under which they were made, not misleading; or (3) to engage in any
>> transaction, practice, or course of business which operates or would
>> operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).  Although not discussed by the parties, there is a threshold question,

unresolved by this Circuit, as to whether an implied private right of action exists under section

17(a).  *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 304 n.9 (1985) ("We

express no view as to whether a private right of action exists under § 17(a)."); *Wachovia Bank &

Trust Co. v. Nat'l Student Mktg. Corp.*, 650 F.2d 342, 350 n.19 (D.C. Cir. 1980) ("[W]e do not

decide whether a private right of action may be implied under [§] 17(a) of the 1933 Act.").

The majority of courts now find that there is no such implied private right of action.  *See,

e.g.*, *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 652 n.25 (11th Cir. 2010) (citations

omitted) (noting that "this circuit has expressly refused to read a private right of action into §

17"); *Maldonado v. Dominguez*, 137 F.3d 1, 7 (1st Cir. 1998) (collecting cases) ("In recent years,

every circuit to have addressed the issue has refused to recognize a private right of action under

section 17(a), including four circuits which originally had held otherwise."); *SEC v. Stoker*, 865

F. Supp. 2d 457, 465 (S.D.N.Y. 2012) (citing *Finkel v. Stratton Corp.*, 962 F.2d 169, 174 (2d

Cir. 1992) (noting that "there is no private right of action—implied or explicit—under Section

17(a)"). Judges in this District who have considered the issue have also found no implied private

right of action to exist. *See, e.g.*, *Bender v. Rocky Mountain Drilling Assocs.*, 648 F. Supp. 330,

334 n.3 (D.D.C. 1986) (citations omitted) ("There is no private right of action under section

17(a)."); *Hammerman v. Peacock*, 607 F. Supp. 911, 915 (D.D.C. 1985) ("[T]his Court adopts

the holding that under section 17(a) of the Federal Securities Act of 1933, a private cause of

action is not implied."). Accordingly, the court will dismiss Count XXII.

<u>§ 10 of the Securities Exchange Act of 1934</u>

With respect to Count L, Defendant Alcitepe raises the same arguments raised for Count

XXII – that the complaint lacks "any specific allegations that Defendant Alcitepe directly or

indirectly utilized means or instrumentalities of interstate commerce or the mails in furtherance"

of the alleged acts, and that the complaint does not meet the particularly requirement of Rule 9(b)

because it fails to allege when and where the acts took place, and which Plaintiffs were harmed.

Defendant Alcitepe's Memorandum at 10-11. Plaintiffs counter that their complaint meets the

requirements of Rule 9(b). Opposition to Defendant Alcitepe's Motion at 18-20.

Section 10(b) of the Securities Exchange Act of 1934 provides that

> It shall be unlawful for any person, directly or indirectly, by the use
> of any means or instrumentality of interstate commerce or of the
> mails . . . [t]o use or employ, in connection with the purchase or sale
> of any security registered on a national securities exchange or any
> security not so registered, or any securities-based swap agreement any
> manipulative or deceptive device or contrivance in contravention of
> such rules and regulations as the Commission may prescribe as
> necessary or appropriate in the public interest or for the protection of
> investors.

15 U.S.C. § 78j(b).  The implementing regulation, Rule 10b-5, provides that

> It shall be unlawful for any person, directly or indirectly, by the use
> of any means or instrumentality of interstate commerce, or of the
> mails or of any facility of any national securities exchange, (a) To
> employ any device, scheme, or artifice to defraud, (b) To make any
> untrue statement of a material fact or to omit to state a material fact
> necessary in order to make the statements made, in the light of the
> circumstances under which they were made, not misleading, or (c) To
> engage in any act, practice, or course of business which operates or
> would operate as a fraud or deceit upon any person, in connection
> with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.  "The elements of a private action under Rule 10b–5 are '(1) a material

misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the

misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the

misrepresentation or omission; (5) economic loss; and (6) loss causation.'"  *Janus Capital*

*Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2301 n.3 (2011) (quoting *Stoneridge*

*Investment Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008)); *see also*

*Plumbers Local #200 Pension Fund v. Wash. Post Co.*, No. 10-1835, 2013 WL 1123390, at *2

(D.D.C. Mar. 19, 2013).  Unlike section 17(a), the Supreme Court has "implied a private cause of

action from the text and purpose of § 10(b)."  *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct.

1309, 1317 (2011) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318

(2007)); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196 (1976) (citations omitted) ("[T]he

existence of a private cause of action for violations of [section 10(b)] and [Rule 10b-5] is now

well established.").

As noted above, both parties rely on Rule 9(b) in articulating their arguments regarding

the requisite pleading standard for Count L.  Although Rule 9(b) previously governed "the

sufficiency of a complaint for securities fraud," the Private Securities Litigation Reform Act of

1995 ("PSLRA"), enacted by Congress "[a]s a check against abusive litigation by private

parties," now requires that plaintiffs "state with particularity both the facts constituting the

alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive,

manipulate, or defraud.'"  *Tellabs*, 551 U.S. at 313-14, 319 (citations omitted); *see also*

*Plumbers Local*, 2013 WL 1123390, at *2 (noting that the statutory standard "exceeds" the

standard set forth in rules 8 and 9 of the Federal Rules of Civil Procedure).  With respect to

scienter, "[e]ither intentional wrongdoing or 'extreme recklessness' satisfies the standard."

*Liberty Prop. Trust v. Republic Properties Corp.*, 577 F.3d 335, 342 (D.C. Cir. 2009) (citation

omitted).

   Where the plaintiff alleges that the defendant made a misleading statement or omission,

the act requires that "the complaint [] specify each statement alleged to have been misleading, the

reason or reasons why the statement is misleading, and, if an allegation regarding the statement

or omission is made on information and belief, the complaint shall state with particularity all

facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  With respect to the defendant's

state of mind, "the complaint shall, with respect to each act or omission alleged to violate this

chapter, state with particularity facts giving rise to a strong inference that the defendant acted

with the required state of mind."  § 78u-4(b)(2).  The Supreme Court has interpreted the

requirement that the inference be "strong," to mean that "an inference of scienter must be more

than merely plausible or reasonable — it must be cogent and at least as compelling as any

opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.

   Plaintiffs generally allege that Defendant Alcitepe had a role in the overall fraudulent

scheme to sell Fusion Cuisine shares, *see, e.g.*, Opposition to Defendant Alcitepe's Motion at 19,

and further allege that they relied on certain omissions attributable to Defendant Alcitepe in

making their purchases, *see* Complaint ¶¶ 33, 44.[5]  Plaintiffs allege that Defendant Alcitepe was

present on two occasions when other Defendants made untrue representations – i.e., asserting to

Plaintiff Kivanc that the business was "sound," and later asserting that Fusion Cuisine owned a

liquor license – and although he knew that the representations were false, he did not prevent them

from making the statements and concealed the truth.  *Id.* ¶¶ 33, 44.  Plaintiffs also allege that

Defendants concealed other matters from them – such as the identity of other investors and the

venture's legal difficulties – but have not pled these with particularly, *see* 15 U.S.C. § 78u-

4(b)(1), and there is no specification that they attribute these omissions to Defendant Alcitepe, as

opposed to the other defendants.  *See, e.g.*, Complaint ¶¶ 62, 79, 86, 96, 105, 110, 119, 121.

Under the PSLRA, the plaintiff must sufficiently plead "scienter" for the claim to survive.

15 U.S.C. § 78u-4(b)(2).  Here, Plaintiffs summarily state that Defendant Alcitepe agreed to

participate in the fraudulent venture with "knowledge of the illegal purpose for which Defendants

Poyraz, Lobo, Henirch and Khoury wished to retain him."  Complaint ¶ 30.  However, this

allegation does not meet the requisite pleading standard, as the complaint does not "state with

particularity facts giving rise to a strong inference that the defendant acted with the required state

---

[5] As noted by Defendant Alcitepe, *see* Defendant Alcitepe's Reply to Plaintiffs' Response to Defendant Akin Alcitepe's Motion to Dismiss Plaintiff['s'] Complaint Counts I, II, III, VIII, XIII, XVII, XVII, XXI, XXII, and L (Document No. 31) at 4-5, Plaintiffs essentially ask the court to infer that "means or instrumentality of interstate commerce" were used, *see* Opposition to Defendant Alcitepe's Motion at 19-20.  Based on their general allegation that some of the Plaintiffs were residents of Virginia and that Defendant Alcitepe's office was in the District of Columbia, *see* Complaint ¶¶ 2, 3, 5, 6, Plaintiffs argue that "Defendant Alcitepe utilized the means of interstate commerce via telephone, email and facsimile communication with Virginia based Plaintiffs and Plaintiffs' respective counsels . . . ."  Opposition to Defendant Alcitepe's Motion at 19.  The other allegations relied on by Plaintiffs include general statements that the parties "regularly communicated," Complaint ¶¶ 122-124; that Defendant Alcitepe drafted various agreements "with input and advice" from other defendants, *id.* ¶¶ 37, 41, 48, 57, 65, 83, 99, 108; and that  "[a]t all times relevant to this action, Defendants communicated with Plaintiffs using the means and instrumentalities of interstate commerce, including but not limited to: telephone, e-mail, and facsimile communications," *id.* ¶ 126.

of mind." *See* 15 U.S.C. § 78u-4(b)(2); *see also Ross v. Walton*, 668 F. Supp. 2d 32, 37, 40 (D.D.C. 2009) (citations omitted) (noting that "[p]laintiffs must also allege facts sufficient to show that the defendants had knowledge that the statements were false at the time they were made," and finding that "a vague assertion that a defendant must have known about the fraud" did not amount to a "strong inference of scienter").

Considering the complaint in its entirety, Plaintiffs' allegations do not give rise to a "strong inference" that Defendant Alcitepe had the requisite state of mind; rather, the court finds that there are stronger "opposing inferences of nonfraudulent intent." *See Tellabs*, 551 U.S. at 314, 324.  Defendant Alcitepe drafted and executed each agreement that purported to transfer Fusion Cuisine shares, "with input and advice" from the other Defendants.  Complaint ¶¶ 37, 41, 48, 57, 65, 83, 99, 108.  Defendant Alcitepe represented Fusion Cuisine in its landlord-tenant dispute and in later bankruptcy proceedings.  *Id.* ¶¶ 79, 93-94, 110, 115.  He was also present at meetings with investors, *see, e.g.*, *id.* ¶ 106, and provided Defendant Poyraz access to his office, *id.* ¶ 113.  From these facts, it can be inferred that Defendant Alcitepe was acting in his capacity as general counsel of Fusion Cuisine, providing legal services to the business venture, without knowledge of its intent to defraud investors.  This inference is particularly compelling since, while not dispositive, Plaintiffs have not alleged any motive or financial gain on the part of Defendant Alcitepe.  *See Plumbers Local*, 2013 WL 1123390, at *5 (finding that "the absence of an identifiable motive" was "noteworthy").  Because Plaintiffs do not plead sufficient facts to give rise to a "strong inference" of scienter, they failed to meet the heightened pleading standard required for a 10(b) claim, and therefore, the court will dismiss Count L.

### *Remaining Counts*

Counts IV, IX, XVI (malpractice), XVI (negligence), and XX pertain solely to Defendants

that are no longer parties to this action, *see supra* note 1, and are thus no longer pending.  Having

dismissed the federal claims – Counts XXI, XXII, and L – the court declines to exercise

supplemental jurisdiction over the remaining nineteen state law claims.  *See* 28 U.S.C. §

1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly,

if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional

sense, the state claims should be dismissed as well."); *Ali Shafi v. Palestinian Auth.*, 642 F.3d

1088, 1097 (D.C. Cir. 2011) (quoting *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir.

2005) ("Whether to retain jurisdiction over pendent . . . claims after the dismissal of the federal

claims is a matter left to the sound discretion of the district court . . . .").  In so deciding, the court

notes that it has not yet considered, or made any determinations, regarding the remaining state

law claims; the parties have not commenced discovery in this matter; and further notes that the

period of limitations for those claims is tolled pursuant to 28 U.S.C. § 1367(d).

**CONCLUSIONS**

On the basis of the foregoing findings, it is, this 29th day of March, 2013,

**ORDERED** that Defendant Akin Alcitepe's Motion to Dismiss Plaintiff[s'] Complaint

Counts I, II, III, VIII, XIII, XVII, XVII, XXI, XXII, and L (Document No. 12) is **GRANTED**

with respect to Counts XXI, XXII, and L, and **DENIED AS MOOT** with respect to the

remaining counts; and it is

**FURTHER ORDERED** that Defendants Antoine S. Khoury and A.S. Khoury &

Associates P.C.'s Motion to Dismiss Plaintiffs' Complaint (Document No. 32) is **GRANTED**

insofar as those Defendants seek dismissal for lack of subject-matter jurisdiction, and **DENIED**

**AS MOOT** in all other respects; and it is

      **FURTHER ORDERED** that if Plaintiffs intend to seek leave to file an amended

complaint, they shall do so by no later than April 22, 2013.[6]

        /s/
DEBORAH. A. ROBINSON
United States Magistrate Judge

---

    [6] *See* Fed. R. Civ. P. 15(a)(B); *see also Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012) (internal quotation marks and alterations omitted) (quoting *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006)) ("A bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)."); *Plumbers Local*, 2013 WL 1123390, at *1 (noting that the court previously permitted the plaintiff "to amend its complaint to attempt to cure the deficiency," following the court's granting of the defendant's first motion to dismiss).